IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Richard Sisson, )
    Plaintiff, )
     )
v. )   1:11cv313 (LMB/TCB)
     )
Fred Davis, et al., )
    Defendants. )

F I L E D
SEP 30 2011
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

Richard Sisson, a Virginia inmate proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983, seeking monetary damages and injunctive relief for allegedly inadequate medical care he received at Deerfield Correctional Center ("DCC").[1] Plaintiff alleges defendants failed to timely procure an appropriate sneaker for his prosthetic leg resulting in the deterioration of plaintiff's medical condition. Defendants Badgett and Connor filed a Motion for Summary Judgment on July 27, 2011. Defendants Bass, Davis[2], Faison, and Schilling filed a separate Motion for Summary Judgment on August 15, 2011. Both sets of defendants submitted memoranda supported by numerous exhibits and affidavits and provided plaintiff with notice and opportunity to file responsive materials, as required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). After twice granting plaintiff extensions of time to file his response, plaintiff filed an Opposition to Summary Judgment for defendants Connor and Badgett. Plaintiff did not file any response to defendants Bass, Davis, Faison, and Schilling's

---

[1] In the initial complaint plaintiff alleged the defendants' actions violated his Eighth and Fourteenth Amendment rights as well as "associated state law claims" and his rights under the Americans with Disabilities Act. However, as defendants correctly point out, plaintiff failed to state any facts or offer any evidence in support of these additional claims. Mem. in Support Bass, Davis, Faison, Schilling at 11 n.5, ECF. No. 28. As a result these claims will be dismissed.
[2] Plaintiff's complaint erroneously lists Warden Davis' first name as "Fred" instead of "Keith."

1

Motion for Summary Judgment. For the reasons which follow, the Court will grant defendants' Motions for Summary Judgment.

## I. Background

The following material facts are uncontested. In March 2009, plaintiff underwent an amputation of his right leg, allegedly after contracting an infection from an injury sustained during his incarceration at Rappahannock Regional Jail. Compl. ¶ 3-6, ECF No.1. After the amputation, plaintiff requested to be transferred to Deerfield Correctional Center ("DCC") because physical therapy was available in house. Mem. in Support Badgett & Connor 1, ECF No. 23. On July 14, 2009 plaintiff was transferred to DCC and on August 18, 2009 plaintiff had his initial consultation with the in-house physical therapist. Id. at 1-2. During the initial consultation, the physical therapist requested that plaintiff be fitted for a prosthetic leg. Id. at 2.

On September 9, 2009 plaintiff went off-site to T.G. Powell for the initial prosthetic leg fitting. Id. During plaintiff's second off-site visit, on October, 16, 2009, plaintiff's prosthetic leg was ordered and the prosthestist recommended that the plaintiff use a Converse leather sneaker, size 11EEE, with his prosthetic. Ex. A., ECF No. 23.

On October 23, 2009 Nurse Badgett attempted to procure the sneaker recommended by the prothestist at T.G. Powell. Badgett Aff. ¶ 4, ECF No. 23. Unable to locate the particular sneaker, Nurse Badgett spoke with an individual at T.G. Powell on November 20, 2009, who informed her that T.G. Powell did not sell the recommended sneaker or any other shoe designed for prosthetic legs. However, the individual at T.G. Powell told Nurse Badgett that any shoe that fit plaintiff's sound leg would work fine for the prosthetic. Id. at ¶ 6.

After speaking with the individual at T.G. Powell, Nurse Badgett requested that the medical department at DCC order a pair of diabetic high top sneakers. Id. at ¶ 7. The next day,

2

November 21, 2009, Carin Neely, the head of medical supply at DCC, told Nurse Badgett she was unable to "get high top shoes of any form." Id. at ¶ 8. On November 29, 2009, Nurse Badgett requested a doctor's prescription for diabetic tennis shoes because she believed the shoes were available in high top. Id. at ¶ 9. On December 5, 2009 Nurse Badgett instructed Neely to order the diabetic tennis shoes and to notify her when they arrived so plaintiff could be scheduled at T.G. Powell to receive his prosthetic leg. Id. at ¶ 10. However, Nurse Badgett discovered diabetic tennis shoes were available in only low top, and because the physical therapist at DCC recommended high top sneakers for ankle support, Nurse Badgett determined the diabetic shoes would not work. Id. at ¶ 11.

Although DCC's commissary sold high top sneakers plaintiff could not afford them and procurement rules forbid the medical department from purchasing them. Id. at ¶ 12. Thus, on December 19, 2009, Nurse Badgett asked medical staff to determine how to pay for and acquire high top sneakers. Id. On December 29, 2009 Neely informed Badgett that high top sneakers could not be procured in-house, but they could procure a leather boot. Id. at ¶ 13.

Because the sneaker could not be procured in house, the medical department contacted 815 Inc., the approved vendor from which VDOC orders medical supplies. 815 Inc. also did not sell the particular shoe and the medical department was required to purchase the shoe through another source. Id. at ¶ 15. Before doing so, however, VDOC procurement procedures required the DCC business office to obtain written certification confirming that 815 Inc. was unable to provide the shoe. Id. On March 19, 2010 the medical department located and ordered black high top New Balance tennis shoes, size 11EEE, from Westbury Pharmacy. Id., Ex. B, ECF No 23. Plaintiff received the shoes and the prosthesis on March 26, 2010. Badgett Aff. ¶ 17.

During plaintiff's incarceration at DCC he filed numerous administrative grievances and medical requests regarding his medical condition, both before and after his initial appointment at T.G. Powell. All grievances were answered. Connor Aff. ¶ 3, ECF. No. 23; Davis Aff. ¶ 6, ECF No. 28; Faison Aff. ¶ 3-4, ECF No. 28; Schilling Aff. ¶ 10. ECF No. 28.

In opposition to the defendant's summary judgment motions, plaintiff filed an Opposition to Motion for Summary Judgment of defendants Connor and Badgett. Plaintiff's reply includes a declaration[3] which consists mostly of excerpted language from relevant legal authorities. The factual allegations plaintiff makes do not contradict the statements in defendant's motions for summary judgment or supporting affidavits.

## II. Standard of Review

In reviewing the Motion for Summary Judgment by defendants, courts must view the facts in the light most favorable to the party opposing the motion. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997). Summary judgment is appropriate where "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A "genuine" issue of material fact is present "if the evidence is such that a reasonable jury could . . . return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "When a motion for summary judgment is made and supported . . . [by affidavits], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy a non-moving party's burden on summary judgment. Carter v. Ball, 33

---

[3] Plaintiff states at the top of his declaration that he offers it "under penalty of perjury." However, the declaration is not notarized.

4

F.3d 450, 461-62 (4th Cir. 1994); Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988).

### III. Analysis

A. Deliberate Indifference

To state a claim of inadequate medical care that rises to the level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 105 (1976); see also Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Thus, a plaintiff must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. Second, he must allege deliberate indifference to that serious medical need. Under this second prong, an assertion of mere negligence or malpractice is not enough to state a constitutional violation; instead, plaintiff must allege and demonstrate "[d]eliberate indifference . . . by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); see also Estelle, 429 U.S. at 106. In other words, a plaintiff must allege facts demonstrating that defendant's actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851 (citations omitted).

In this case, it is apparent that plaintiff's claim of inadequate medical care during his confinement at DCC does not rise to the level of an Eighth Amendment violation. Assuming that plaintiff's medical needs resulting from his amputation are serious medical conditions warranting Eighth Amendment protection, it is abundantly clear on the record that the defendants did not exhibit reckless disregard of plaintiff's medical needs. To the contrary, the record demonstrates that efforts were made almost immediately after plaintiff's prosthetic was ordered

to secure the shoe recommended by the prothesist at T.G. Powell. Nothing in the record suggests that the seven-month delay in procuring the appropriate shoe for plaintiff's prosthetic was the result of "actual intent or reckless disregard." Instead, the record demonstrates that Nurse Badgett made repeated and prompt attempts to secure the appropriate shoe for plaintiff, and the delay was the unfortunate result of the difficulty she encountered in finding a suitable shoe and simultaneously complying with VDOC procurement rules. While the delay in receiving the appropriate shoe was undoubtedly frustrating for the plaintiff, it was not sufficiently egregious to constitute a violation of his Eighth Amendment rights. See, e.g., McCutcheon v. Sood, No. 99C932, 2000 WL 528481, at*5 (N.D. Ill. Apr. 26, 2000) (finding several month delay in receiving shoes does not amount to deliberate indifference when the delay was a result of required paperwork).

Additionally, even if plaintiff had offered evidence establishing that the delay in ordering the recommended shoe compromised his constitutional rights, he alleges no direct involvement by any of the remaining named defendants in the alleged inadequate medical care. In regards to Nurse Connor, plaintiff fails to come forward with any evidence to show that she was deliberately indifferent to his medical needs or played any role in delaying his receipt of his shoes. Nurses Connor's only involvement with plaintiff's medical care was her written responses to plaintiff's inquiry about the status of his shoe. This Court has previously found that this level of involvement, without more, is insufficient to make a showing of deliberate indifference. See Graham v. Aponte, No. 1:08cv308(LMB/JFA), 2009 WL 249779, at *4 n.4, (E.D. Va. Feb. 2, 2009) (granting summary judgment in favor of defendant when defendant's only involvement was written responses to plaintiff's medical inquiries about the status of his soft shoes).

The involvement in the medical care of the plaintiff by the named defendants Bass[4], Davis, Faison, and Schilling, all of whom are not medical professionals, was also limited to responding to grievances and inquiries. However, inmates do not have a constitutionally protected right to a grievance procedure and no liability exists under § 1983 for a prison administrator's response to a grievance or appeal. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Brown v. Va. Dep't Corr., No. 6:07-CV-00033, 2009 WL 87459, at *13. (W.D. Va. Jan. 9, 2009). Plaintiff offers no evidence that any of these individuals were deliberately indifferent to his medical needs, were responsible for the delay in ordering his shoe, or had any authority to dictate plaintiff's medical treatment. If anything, the record only demonstrates that each of these defendants promptly and properly responded to plaintiff's numerous grievances.

Lastly, it is noted that plaintiff alleges in his Opposition to Motion for Summary Judgment that his amputation was a result of his injury that occurred at Rappahannock Regional Jail due to the staff's "failure to ensure a safe and secure environment." Because plaintiff named no defendants in his original complaint involved in his initial injury this claim is outside the pleadings which framed the issue in this case and cannot be considered here.

B. Qualified Immunity

Defendants Bass, Davis, Faison, and Schilling also assert that even if they otherwise were liable to plaintiff for his claim, they are entitled to qualified immunity for their actions. Given that the defendants have established their entitlement to judgment as a matter of law on

---

[4] In plaintiff's complaint, plaintiff states he met with Bass on December 2, 2009, at plaintiff's dormitory to discuss plaintiff's need for a shoe. Compl. ¶ 38. Plaintiff further alleges that Bass told plaintiff he would have the shoes by the end of the week and that plaintiff wrote Bass a letter on December 13, 2009 but received no response. Id. Bass, in his affidavit, states he has no recollection of meeting with plaintiff and no record of receiving correspondence from plaintiff. Bass Aff. ¶ 4. Plaintiff has offered no evidence to contest this. Thus, the record before the court demonstrates that Bass had no involvement or knowledge of plaintiff's claims.

plaintiff's claim against them, it is unnecessary for the Court to address defendants' arguments on the question qualified immunity.

### IV. Conclusion

For the foregoing reasons, defendants' Motions for Summary Judgment will be granted, and summary final judgment will be entered in their favor. An appropriate order and judgment shall issue.

Entered this 30th day of September 2011.

Alexandria, Virginia

/s/
**Leonie M. Brinkema**
**United States District Judge**