IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Richard Sisson,  )
    Plaintiff,  )
      )
v.  )  1:11cv313 (LMB/TCB)
      )
Fred Davis, et al.,  )
    Defendants.  )

F I L E D
FEB -2 2012
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

Richard Sisson, a Virginia inmate proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983, seeking monetary damages and injunctive relief for allegedly inadequate medical care he received at Deerfield Correctional Center ("DCC").[1] Plaintiff alleges defendants failed to procure an appropriate sneaker for his prosthetic leg in a timely manner, which resulted in the deterioration of plaintiff's medical condition. Defendants Badgett and Connor filed a Motion for Summary Judgment on July 27, 2011. Defendants Bass, Davis, Faison, and Schilling filed a separate Motion for Summary Judgment on August 15, 2011. Both sets of defendants submitted memoranda supported by numerous exhibits and affidavits and provided plaintiff with notice and opportunity to file responsive materials, as required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Plaintiff has filed a response to both Motions. Accordingly, this matter is now ripe for disposition.[2] For the reasons that follow, both Motions for Summary Judgment will be granted.

---

[1] In the initial complaint plaintiff alleged the defendants' actions violated his Eighth and Fourteenth Amendment rights. He also alluded to "associated state law claims" and his rights under the Americans with Disabilities Act. However, as defendants correctly point out, plaintiff failed to state any facts or offer any evidence in support of these additional claims. See Mem. in Supp. Bass, Davis, Faison, Schilling at 11 n.5; ECF. No. 28. As a result these claims will be dismissed.

[2] The Court previously entered a Memorandum Opinion and accompanying Order in this action on September 30, 2011. See ECF Nos. 36, 37. The Court vacated that Memorandum Opinion in

1

## I. Background

In March 2009, plaintiff's right leg was amputated after he allegedly contracted an infection from an injury sustained during his incarceration at Rapahannock Regional Jail. Compl. ¶ 3-6, ECF No.1. On July 14, 2009, pursuant to plaintiff's request, the Virginia Department of Corrections ("VDOC") transferred plaintiff to DCC, where physical therapy was available. See Badgett and Connor Mem. in Supp. at 1; ECF No. 23.

Plaintiff first met with the in-house physical therapist at DCC on August 18, 2009. The physical therapist requested that plaintiff be fitted for a prosthetic leg and on September 9, 2009, plaintiff went off-site to T.G. Powell for the initial prosthetic leg fitting. Id. 1-2. On October 16, 2009, plaintiff returned to T.G. Powell for another fitting. That same day, T.G. Powell ordered plaintiff's prosthetic leg and recommended that the plaintiff wear a Converse leather sneaker, size 11EEE, with his prosthetic. Ex. A., ECF No. 23.

On October 23, 2009 Nurse Badgett, the head nurse at DCC, attempted to secure a Converse leather sneaker, size 11EEE, as recommended by the prosthesist at T.G. Powell. Badgett Aff. ¶ 4; ECF No. 23. Nurse Badgett's was unable to locate the recommended shoe. Therefore, on November 20, 2009, she contacted T.G Powell and spoke with an individual who informed her that T.G. Powell did not sell the recommended sneaker or any other shoe designed for prosthetic legs. Id. at ¶ 6. However, the individual at T.G. Powell told Nurse Badgett that any shoe that fit plaintiff's non-prosthetic leg would work for the prosthetic as well, although high top shoes were recommended for ankle support. Id. at ¶¶ 6, 11. Accordingly, Nurse

---

an Order dated October 20, 2011, after the plaintiff established that the Memorandum Opinion issued before his time to file a response to the Motions for Summary Judgment expired. See ECF No. 42. The Court has now considered plaintiff's responses to the Motions for Summary Judgment. For the reasons that follow, the Court is still of the opinion that both Motions for Summary Judgment must be granted.

Badgett requested that the medical department at DCC order a pair of diabetic high top sneakers. Id. at ¶ 7.

On November 21, 2009, Carin Neely, the head of medical supply at DCC, informed Nurse Badgett she was unable to "get high top shoes of any form." Id. at ¶ 8. On November 29, 2009, Nurse Badgett requested a doctor's prescription for diabetic tennis shoes because she believed the shoes were available in high top. Id. at ¶ 9. On December 5, 2009, Nurse Badgett instructed Neely to order the diabetic tennis shoes and to notify her when the shoes arrived so plaintiff could be scheduled at T.G. Powell to receive his prosthetic leg. Id. at ¶ 10. Shortly thereafter, however, Nurse Badgett discovered that diabetic tennis shoes were available in low top only and therefore concluded that the diabetic shoes would not be suitable for plaintiff. Id. at ¶ 11.

The prison commissary sold regular high top sneakers. However, plaintiff could not afford them and procurement rules forbid the medical department from purchasing them. Id. at ¶ 12. Thus, on December 19, 2009, Nurse Badgett asked medical staff to determine how to pay for and acquire high top sneakers. Id. On December 29, 2009, Neely informed Badgett that high top sneakers could not be procured in-house. Id. at ¶ 13.

Because the high top sneaker could not be procured in house, the medical department contacted 815 Inc., the approved vendor from which VDOC orders medical supplies. 815 Inc. also did not sell the particular shoe in high top and the medical department was required to purchase the shoe through another source. Id. at ¶ 15. Before doing so, however, VDOC procurement procedures required the DCC business office to obtain written certification confirming that 815 Inc. was unable to provide the shoe. Id. On March 19, 2010, the medical department located and ordered a black high top New Balance tennis shoes, size 11EEE, from

3

Westbury Pharmacy. Id.; Ex. B; ECF No 23. Plaintiff received the shoe and the prosthesis on March 26, 2010. Badgett Aff. ¶ 17.

Throughout plaintiff's medical treatment, he filed numerous grievances. Specifically, plaintiff alleges that he filed grievances with defendants Davis, Schilling, and Faison. See Compl. at 5, 10, 8. Plaintiff alleges that on September 15, 2009, defendant Faison responded to letter/grievance from plaintiff asking when he would be fitted for his prosthetic leg by stating: "I do not have a date. They will call me when they are ready to see you again." Compl. at 8. On December 1, 2009, defendant Davis responded to one of plaintiff's grievances by deeming the grievance "founded." See Compl. at 10. On December 10, 2009, defendant Shilling issued a Level II ruling in one of plaintiff's grievances overturning the Level I decision and stating "Physician at DFCC is in charge of your medical care." Id.

Furthermore, plaintiff also alleges that he spoke with defendant Bass on December 2, 2009, and defendant Bass told plaintiff he would have his shoe by the end of the week. When the shoe did not arrive, plaintiff allegedly wrote a letter to Bass asking about the status of his footwear, but Bass never responded. Compl. at 10.

It is undisputed that defendants Davis, Schilling, Faison, and Bass are not medical doctors, and had no involvement in plaintiff's medical treatment or the procurement of his footwear, other than answering his letters and grievances. Davis Aff. ¶¶ 5,7; Fasion Aff. ¶¶ 4,5; Bass Aff. ¶ 4; Schilling Aff. ¶ 4.

## II. Standard of Review

In reviewing a motion for summary judgment, courts must view the facts in the light most favorable to the party opposing the motion. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997). Summary judgment is appropriate where "there is no genuine dispute as to any

4

material fact the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A "genuine" dispute as to a material fact is present "if the evidence is such that a reasonable jury could . . . return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When a motion for summary judgment is made and supported by affidavits, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy a non-moving party's burden on summary judgment. Carter v. Ball, 33 F.3d 450, 461-62 (4th Cir. 1994); Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988).

### III. Analysis

A. <u>Deliberate Indifference</u>

To state a claim of inadequate medical care that rises to the level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 105 (1976); see also Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Thus, a plaintiff must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. Second, he must allege deliberate indifference to that serious medical need. Under this second prong, an assertion of mere negligence or malpractice is not enough to state a constitutional violation; instead, plaintiff must allege and demonstrate "[d]eliberate indifference . . . by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); see also Estelle, 429 U.S. at 106. In other words, a plaintiff must allege facts demonstrating that defendant's actions were "[s]o grossly incompetent, inadequate,

5

or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851 (citations omitted).

1. Nurse Badgett

Plaintiff's claim against Nurse Badgett must fail because he has failed to demonstrate that Nurse Badgett's actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851. The record establishes that Nurse Badgett diligently sought to procure a shoe for plaintiff's prosthetic leg. Within a week of plaintiff's prosthetic leg being ordered, Nurse Badgett began searching for an appropriate shoe for plaintiff. Nothing in the record suggests that the delay in procuring the appropriate shoe for plaintiff's prosthetic was the result of "actual intent or reckless disregard." To the contrary, the record demonstrates that Nurse Badgett made repeated and prompt attempts to secure the appropriate shoe for plaintiff, and the delay was the unfortunate result of the difficulty she encountered in finding a suitable shoe and simultaneously complying with VDOC procurement rules. While the delay in receiving the appropriate shoe was undoubtedly frustrating for the plaintiff, it was not sufficiently egregious to constitute a violation of his Eighth Amendment rights. See, e.g., McCutcheon v. Sood, No. 99C932, 2000 WL 528481, at *5 (N.D. Ill. Apr. 26, 2000) (finding several month delay in receiving medical shoes does not amount to deliberate indifference when the delay was a result of required paperwork).

2. Nurse Connor

Plaintiff fails to come forward with any evidence to demonstrate that Nurse Connor was deliberately indifferent to his serious medical needs, or that she played any role in delaying the receipt of his shoes. It is undisputed that Nurse Connor's only involvement with plaintiff's medical care was her written responses to plaintiff's inquiry about the status of his shoe. Connor

6

Aff. ¶ 3; Mem. in Supp. at 7; ECF No. 23; Compl. at ¶¶ 18, 27-29, 36. This Court has previously found that this level of involvement, without more, is insufficient to make a showing of deliberate indifference. See Graham v. Aponte, No. 1:08cv308(LMB/JFA), 2009 WL 249779, at *4 n.4, (E.D. Va. Feb. 2, 2009) (granting summary judgment in favor of defendant when defendant's only involvement was written responses to plaintiff's medical inquiries about the status of his soft shoes); cf. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (finding that inmates do not have a constitutional right to a grievance procedure).

3. Defendants Bass, Davis, Faison, and Schilling

Plaintiff's claims against defendants Bass, Davis, Faison, and Schilling must also fail because the record does not establish that they acted with deliberate indifference to plaintiff's medical needs. First, none of these defendants are medical professionals. In order to state a medical treatment claim against non-medical defendants, plaintiff must demonstrate that the non-medical officials (1) were personally involved in the denial of treatment, (2) deliberately interfered with the prison doctor's treatment, or (3) tacitly authorized or were indifferent to the prison doctor's misconduct. Mitlier v. Beorn, 896 F.3d 848 (4th Cir. 1990).

Here, plaintiff argues in his Opposition to the Motion for Summary Judgment that these defendants gained knowledge of his medical issues through grievances, but continued to deny him access to medical professionals. See generally Opp'n Summ. J.; ECF No. 44. This argument is nothing more than a back-door attempt to hold these defendants liable for their responses to plaintiff's grievances. Consequently, this argument must fail because inmates do not have a constitutionally protected right to a grievance procedure and no liability exists under § 1983 for a prison administrator's response to a grievance or appeal. See Adams v. Rice, 40 F.3d

72, 75 (4th Cir. 1994); Brown v. Va. Dep't Corr., No. 6:07-CV-00033, 2009 WL 87459, at *13. (W.D. Va. Jan. 9, 2009).

Furthermore, it is undisputed that responding to plaintiff's grievances was the only involvement these defendants had in plaintiff's medical treatment. The record does not establish that these defendants were involved either directly or indirectly in plaintiff's medical treatment or that any of these defendants took actions to delay or impede the receipt of plaintiff's shoe. Furthermore, the record does not indicate that these defendants failed to implement prescriptions or orders of prison physicians. As such, plaintiff has failed to establish that these non-medical defendants violated his constitutional rights. See Mitlier v. Beorn, 896 F.3d 848 (4th Cir. 1990).

In his Opposition to the Motion for Summary Judgment, plaintiff vehemently argues that at least defendant Bass should be held liable because, according to plaintiff, he and Bass met at DCC on December 2, 2009 and Bass "assured" plaintiff that plaintiff would receive his shoe by the end of the week. Opp'n to Summ J. at ¶ 13; ECF No. 44. When the shoe did not arrive, plaintiff wrote a letter to defendant Bass that went unanswered. Id. According to Bass' sworn affidavit, he was in Richmond on December 2, 2009, and never met with plaintiff. Bass Aff. ¶¶ 3-4. Furthermore, Bass states that he has no record of receiving correspondence from plaintiff, and that any correspondence concerning plaintiff's medical issues would have been sent to the VDOC Office of Health Services for a response. Id. at ¶ 4.

Even construing the facts in a light most favorable to the plaintiff, as is required when adjudicating a motion for summary judgment, plaintiff fails to establish that there is a genuine dispute as to any material fact. First, plaintiff does not establish that Bass had any authority to deal with plaintiff's medical issues. To the contrary, the record establishes that Bass has "no authority over medical matters." Id. Furthermore, the record does not establish that Bass

8

actually received plaintiff's letter and then chose to ignore it. Rather, the record establishes that even if plaintiff did send a letter to Bass, Bass did not receive the letter because the letter would have been forwarded to the VDOC Office of Health Services. Id. Accordingly, plaintiff's claims against Bass, Davis, Faison, and Schilling must be dismissed.

B. Qualified Immunity

Defendants Bass, Davis, Faison, and Schilling also assert that even if they otherwise were liable to plaintiff for his claim, they are entitled to qualified immunity for their actions. Given that the defendants have established their entitlement to judgment as a matter of law on plaintiff's claim against them, it is unnecessary for the Court to address defendants' arguments on the question qualified immunity.

## IV. Conclusion

For the foregoing reasons, defendants' Motions for Summary Judgment will be granted, and summary final judgment will be entered in their favor. An appropriate order and judgment shall issue.

Entered this 2nd day of February 2012.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge